**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
================================================

UNITED STATES OF AMERICA,

                                          Plaintiff,        13-CR-344 (DNH)

   -against-

                                                                         SENTENCING
                                                                         MEMORANDUM OF
MICHAEL LOMBARDO                                  DEFENDANT MICHAEL
                                                                        LOMBARDO

                                          Defendant.

================================================

**I. Introduction**

On September 13, 2013 defendant Michael Lombardo entered into a plea agreement, waived indictment and pled guilty to a one count Information charging him with Receipt of Child Pornography, in violation of Title 18 U.S.C. §§2252A(2)(A) and 2256(8)(A). Mr. Lombardo is scheduled to be sentenced on February 28, 2014.

**II. Background and Personal Circumstances of Michael Lombardo**

Michael Lombardo is a 25 year-old native and resident of Rome, NY who graduated *cum laude* from the Berklee School Music in 2009. He has been a successful musician and performer, but currently works as a sound engineer; and, he has a girlfriend who is one year younger than he is. The Presentence Report (PSIR) sets forth further details of Mr. Lombardo's background and family circumstances. Members of his family and friends will be submitting letters of support to the Court on his behalf. More personal circumstances regarding Mr. Lombardo, are set forth in this memorandum as they pertain to specific sentencing issues. Mr. Lombardo has some significant mental and emotional problems that do not necessarily relate to sexual conduct; we will submit information about these issues to Chambers in order to protect Mr. Lombardo's

medical privacy, and ask that the information be appended to the PSIR or Statement of Reasons so that the information follows Mr. Lombardo to the Bureau of Prisons.

**III. Facts and Circumstances of the Case**

Mr. Lombardo, at the time the search warrant in this case was executed in December 2011, was a musician who performed mostly on the Internet, and he was working as a sound engineer in the Rome, NY area. The PSIR sets forth the basic facts concerning the offense. Suffice it to say, Mr. Lombardo became a sought-after musical performer, live and on the Internet, who developed a following of fans, some of who became "groupies". As will be stressed throughout, Mr. Lombardo is guilty of the offense and is not downplaying his guilt, or his conduct. However, it is important to remember that Mr. Lombardo was 21-23 years old when he engaged in the conduct that has brought him to this position. In addition, he never posted, disseminated or shared any of the images or videos that were made during the course of his conduct. He did not have sexual contact with any of the underage victims; he was scheduled to work in the Rome area on New Year's Eve 2011, and never intended or planned to meet with V-1 as described in paragraph 8 of the PSIR. Approximately 80% of the females he engaged in cybersex with were older than 17. None of the girls with whom he was involved were children.

Mr. Lombardo was not arrested at the time the search warrant was executed in December 2011, and was not charged until approximately six months later on July 20, 2012. He has been free on personal recognizance bond since July 25, 2012. As noted in the PSIR, he did have one incident in April 2013 while on release when he and his girlfriend went to the zoo in Syracuse. As noted in the PSIR, Mr. Lombardo thought that any children who might be at the zoo would have been in school. The PSIR does not mention the fact that Mr. Lombardo went to the zoo at

the behest of his girlfriend – a fact verified by the Pretrial Services Officer when she interviewed Mr. Lombardo's girlfriend at the time of the Court inquiry into the incident.

**IV. Sentencing Calculations, Issues and Recommendations**

<u>**Guidelines Calculation**</u>

The PSIR Sentencing Guidelines recommended calculation places Mr. Lombardo at a Level of 43, reduced to Level 37 due to the fact that the statutory maximum sentence is 20 years. 18 USC §2252A(b)(1)  Mr. Lombardo's Recommended level is so high because of the inclusion of a number of aggravating factors and the grouping rules of so called pseudo offenses   Mr. Lombardo is in Criminal History Category I as he has never been involved in the criminal justice system.  It is submitted that while many aspects of the Guidelines calculation in the PSIR arguably apply to Mr. Lombardo that the criminal statute and Guidelines applicable were not necessarily drafted with Mr. Lombardo in mind.  For example, the statute to which Mr. Lombardo pled guilty, 18 USC §2252A(a)(2)(A) would normally use §2G2.2 to determine the base offense level, and it would have been Level 22 instead of Level 32.  The PSIR utilizes Guidelines §2G2.1 to compute the Base Offense Level because §2G2.2(c) cross references §2G2.1 if the offense "…(I)nvolved causing…a minor to engage in sexually explicit activity for the purpose of producing a visual depiction…or for the purpose of transmitting a visual depiction of such conduct."

**Incarceration**

Because the recommended Guidelines calculation exceeds 240 months (the statutory maximum), the nearest Guideline Level is 37.  Criminal History Category I provides a potential incarceration range of 210 to 262 months.

**Supervised Release**

The Court may impose a term of supervised release of five years to life.

### Probation

Probation is not an option in this case.

### Fine

Mr. Lombardo, it is submitted, does not have the financial ability to pay a fine. The PSIR implies that since Mr. Lombardo borrowed money from his parents, he has the wherewithal to pay a fine.

### Recommended Restitution

Restitution is possible in this case, but according to the PSIR there have been no claims.

### Forfeiture

Mr. Lombardo's computer equipment seized by the FBI is being forfeited.

**Downward Departure Motions by Government**

No motion is anticipated from the Government.

**Departure for Combination of Circumstances - §5K2.0**

There does appear to be a combination of factors present in this case that would warrant a departure based on the failure of the Guidelines Commission to adequately consider the factors when formulating the recommended Sentencing Guidelines. Mr. Lombardo engaged did the things described in the PSIR, but he did not distribute or intend to distribute the videos or pictures. It is submitted that the purpose of the §2G2.1 (and 18 USC §2251 with its 15 year mandatory minimum, which was not charged here) is to deal with individuals who produce or distribute child pornography for the potential dissemination or dissemination to others, as well as for individuals who get others (such as a parent) to induce or force their children to participate. It could not possibly have been intended to apply to individuals engaging in cybersex for their

own personal reasons with no intention of sharing with others in a way that victimizes the minor. Otherwise, the Government would be looking to lock up every sub-18 year old teenager who takes "dirty" pictures of his or her girlfriend or boyfriend using a cell phone that uploads photos or using a camera attached to a computer. It is submitted that these draconian Guidelines were never meant to deal with personal computer cybersex. It is also submitted that the effective double counting of specific offense characteristics such as use of a computer (§2G2.1(b)(6)(B)), and commission of a sexual act (2G2.1(b)(2)(A)) when there was no actual contact between persons is also unfair in these circumstances – the offense could not have been committed at all without the computer and there was no actual contact.

**V. Non-Guidelines Sentence – Alternative to §5K2.0 – 18 USC §3553(a) Factors**

A sentencing Court should start its sentencing determination with the Guidelines calculation; listen to the arguments of the parties as to the appropriate sentence; consider the sentencing factors listed in 18 U.S.C. §3553(a); make an individualized assessment of the facts; and explain the sentencing decision in a way that supports either a Guidelines or non-Guidelines sentence. See *Gall v. United States,* 552 U.S. 38, 128 S. Ct. 586, 596-7, 169 L. Ed. 445, 457 (2007) citing *Rita v. United States,* 551 U.S. 388, 127 S.Ct. 2456, 2480, 168 L. Ed. 203 (2007)

The Second Circuit in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) authorized a district court to impose a non-guidelines sentence, even in cases where a sentencing guidelines downward departure would not ordinarily be warranted, if after considering all the factors set forth in 18 U.S.C. § 3553(a), the Court determines that it is appropriate to impose a non-Guidelines sentence. *Crosby* at 113. Further, the Court can consider its own sense of what is fair and just. *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006). *See also*, *United States v. Castillo*, 460 F.3d 337, 356 (2d Cir. 2006) (reaffirming *Jones'* holding that "a district court may

consider 'the judge's own sense of what is a fair and just sentence under all the circumstances.'"). In doing this, a sentencing court "…(M)ay not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors…." *United States v. Cavera,* 550 F.3d 180, 189 (2d Cir. 2008)

Because of anomalies in the promulgation of the child pornography sentencing guidelines, district courts, in those types of cases, do not receive the same kind of information or guidance as from other advisory sentencing guidelines in addressing sentencing goals. The Second Circuit has emphasized the "broad discretion" of district courts to vary from the child pornography guidelines. *United States* v. *Dorvee,* 616 F. 3d. 174, 188 (2d Cir. 2010); *see also United States* v. *Chow*, 441 Fed.Appx. 44, 2011 WL 5829616 (2d Cir. 2011) *(*"*Dorvee* recognizes district courts' post-Booker authority to 'vary from the Guidelines range based solely on a policy disagreement with the Guidelines,' and encourages courts to take seriously that discretion 'in fashioning sentences under § 2G2.2' for child pornography defendants."); *United States* v. *Perez-Frias,* 636 F.3d 39, 43 (2d Cir. 2011) ("We criticized the child pornography Guideline in *Dorvee* because Congress ignored the Commission and directly amended the Guideline, which had the effect of 'eviscerat[ing] the fundamental statutory requirement in §3553(a) that district courts consider 'the nature and circumstances of the offense and the history and characteristics of the defendant. "')

In *United States* v. *Dorvee,* the defendant was sentenced to the statutory maximum term of imprisonment (240 months) less credit for time served on a related state sentence following his guilty plea to one count of distribution of child pornography in violation of 18 U.S.C. §2252A(a)(2)(A). *Dorvee,* 616 F.3d at 176. The Second Circuit vacated the district court's judgment and remanded the case for resentencing finding procedural error in the imposition of the sentence and that the sentence imposed was substantively unreasonable. *Id*.

The Circuit concluded that the defendant's sentence in *Dorvee* was substantively unreasonable and cautioned district courts not to "presume that a Guidelines sentence is

reasonable for any particular defendant." *Id*. at 182. Stressing the importance of the district court's independent, thorough, and careful analysis of the § 3553(a) sentencing factors, the Court further stated:

> Under §3553(a)'s "parsimony clause," it is the sentencing court's duty to "impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth" at 18 U.S.C. § 3553(a)(2). *United States* v. *Samas,* 561 F.3d 108, 110 (2d Cir.2009). In applying § 3553(a) and its parsimony clause, the court must look to "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. §3553(a)(l), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and the Guidelines themselves, 18 U.S.C. § 3553(a)(5). In conducting this review, a district court needs to be mindful of the fact that it is "emphatically clear" that the "Guidelines are guidelines-that is, they are truly advisory." *Cavera,* 550 F.3d at 189. *Id*. at 183.

In *Dorvee,* the Second Circuit found that the district court violated the sentencing court's parsimony clause by failing to offer a "clear reason why [the] maximum available sentence was required to deter an offender like [the] defendant." *Id*. at 184. The Second Circuit stated that:

> Under the sentencing statute's parsimony clause, if a district court were explicitly to conclude that two sentences equally served the statutory purpose of the sentencing statute, it could not impose the higher." *Id*.

*Dorvee* not only requires that district court conduct their "own independent review of the §3553(a) factors, " but also requires that district courts articulate reasons for imposing a sentence at or near the statutory maximum term of imprisonment. *Id*.

The Second Circuit further explained how the district court's errors in its consideration and application of the § 3553(a) factors in *Dorvee* were even more problematic in the context of the child pornography guidelines, stating:

> These errors were compounded by the fact that the district court was working with a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what §3553 requires. Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. *See Rita* v. *Us,* 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). However, the Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties. *See* United States Sentencing Commission, *The History o*/*the Child Pornography Guidelines,* Oct. 2009, *available at* http://

WWW.ussc. gov/ general! 20091030_ History_Child _Pornography_Guidelines. pdf (last visited April 19, 2010). *Id*.

In sum, the Second Circuit in *Dorvee* not only emphasized the importance of careful consideration of the § 3553(a) factors at sentencing, but also highlighted that district courts must be especially careful in the context of child pornography cases not to allow their consideration of the advisory sentencing guidelines to outweigh or countermand a full and fair consideration of the other § 3553(a) factors, including the nature and circumstances of the offense and the history and background of the defendant. *See Dorvee*, 616 F.3d 174.

An analysis of all the factors the Court must consider compels the conclusion that a sentence to the statutory minimum of 60 months is appropriate in this case and would satisfy all the factors listed in §§3553 (a)(1)-(7).

**Section 3553 (a) (1) -Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

As is apparent from the PSIR, Mr. Lombardo understands the seriousness of his conduct. His involvement can best be described from Dr. Lesswing's report, which reads in part (with some details and diagnoses omitted):

> Michael reviewed at length his musical career, touring, and Internet communication with his fan base, which he estimated to be 85% female and adolescent to young adult for the most part. Most of his communication was through YouTube and Twitter. He stated that there were many thousands of transmissions received and made by him. He estimated that, of over 30,000 such communications, less than 10% reflected sexualized content. He stated that he was in a position of being approached sexually by female fans through the Internet and that he responded to perhaps 30% of those overtures. He estimated that he actually engaged in "cyber-sex" with about fifty females and that probably 80% of them were adult. Michael further elaborated that his (diagnostic details omitted) behavior fueled the incredible amount of Internet activity that he responded to and engaged in. It is important, therefore, to consider the instant offenses within the overall context of the immense volume of these communications. He stated that "cyber-sex" encounters only occurred after repeated Internet communications, which were not initially sexual, and within the context of "internet relationships." This cyber-sex activity appears to have become an essentially normative occurrence within his setting and with the cohort with whom he communicated. He stated that the only commonality among the females with whom he communicated was their intelligence. He admitted to awareness that some of the

females were underage, which he acknowledged was "stupid and dumb" on his part. He recognizes that what he was doing was wrong, but likened it, and rationalized it at the time, to the scale of being involved with underage alcohol or drug use. Michael denied that he manipulated, coerced, or met with any of these females for the purpose of having sexual relations. Indeed, he was most comfortable with "cybersex," rather than direct contact, which he eschewed. He noted that he had literally hundreds of opportunities, while touring, to "hook up." He said that he only time he did so was with one college student on one occasion ….

As noted earlier, the PSIR describes the offense conduct. The *in camera* submission of Dr. Lesswing's report describes Mr. Lombardo's mental state. As a result of the arrest in this case, and the work of Dr. Lesswing, Mr. Lombardo has gotten the correct treatment for his mental illness (which does not relate to sexual deviance or abnormal interest in children); he has advanced in his career and he has established a stable and loving relationship with a young woman his own age. He clearly also has strong support from his family, his employer, and a myriad of personal and family friends. The conduct he engaged in was not directed at underage teenage women, it was directed at engaging in cybersex, and the vast majority of his interaction was with young women who were over 18 and close to his own, young age.

**Section 3553 (a) (2) Factors**

### a. (a)(2)(A) -The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Respect for the Law and Just Punishment

There is no doubt that a five year sentence reflects the seriousness of this offense. It is a felony conviction with all the attendant collateral consequences; that alone reflects the seriousness of his conduct. Such a sentence would do nothing to detract from the public's respect for the law and it is submitted that it would be more than just punishment here under all of the circumstances.

### b. (a)(2)(B) -General Deterrence

Any sentence for a felony would deter any reasonable person from becoming involved in

the sort of activity involved in this case. No prospective prison sentence will necessarily deter an individual (as evidenced by Mr. Lombardo's own exchange with one of the victims) – knowing that engaging in certain types of activities increases the likelihood of law enforcement scrutiny, apprehension and conviction is about the only thought that deters individuals. There is no question that the existence of a criminal justice system generally deters people from committing crimes. However there is also no evidence that sentence length reduces crime through deterrence. See Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-9 (2006); Durlauf, S. N. and Nagin, D. S. (2011), *Imprisonment and Crime*, Criminology & Public Policy, 10: 13–54; and Tierney, John, *Prison Population Can Shrink When Police Crowd Streets*, New York Times, January 26, 2013.

### c. (a)(2)(C) - Protection of the Public

A five year prison sentence for Mr. Lombardo will adequately protect the public. In fact the public will be protected whether Mr. Lombardo goes to jail or not so long as he continues his treatment for his mental health issues.

### d. (a)(2)(D) – Need for Education, Training, Medical Care, et al.

Mr. Lombardo will most likely not benefit from programs at the Bureau of Prisons. The PSIR describes his medical and mental condition, and it is obvious that these elements of his life can be best dealt with when he is out of jail. As his problems are not related to child pornography or sexual attraction to younger people, he is unlikely to receive adequate treatment in BOP's sex offender programs exacerbate his emotional and medical state.

**Section 3553 (a)(3) - Kinds of Sentences Available**

A sentence of incarceration is mandatory with this charge.

**Sections 3553 (a)(4) and (a)(5) – Advisory Guideline Range and Policy Statements**

See above.

### Section 3553 (a)(6) -Sentencing Disparity

In determining a non-guideline sentence, courts can consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a) (6); *see also United States* v. *Wills*, 476 F.3d 103 (2d Cir. 2007), *abrogated on other grounds by United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir.2008). In determining an appropriate sentence for Michael Lombardo, the Court should consider not only other federal cases, but also the nature and types of sentences that an offender like Mr. Lombardo would likely receive if he had been prosecuted in a New York State Court. It is submitted that had Mr. Lombardo been prosecuted under New York penal laws, his period of incarceration, if any, would have been substantially less than the mandatory minimum required under Federal law.

### Section 3553 (a)(7) –Restitution

This does not appear to be a factor in this case.

## VII. Conclusion

For all the foregoing legal and factual reasons, the Court should impose a sentence of five years imprisonment and five years of supervised release. Finally, the Defendant requests that the Court recommend that he be incarcerated in a BOP facility as close as possible to his home and family in Rome, NY, that the Court recommend that Mr. Lombardo be evaluated as to his mental state as soon as possible so as to receive appropriate treatment, and that given his currently stable mental condition and the need to maintain it, that he be authorized to report to the his designated BOP facility on a date within time limits set by the Court.

I certify that this Memorandum was filed with the NDNY ECF system and that notice was thus provided to The United States Attorney's Office and the U.S. Probation Office for the Northern District of New York

Dated: February 14, 2014

        Respectfully submitted,

        /S/   Donald T. Kinsella
        Donald T. Kinsella
        Bar Roll No.: 103149
        Attorney for Defendant LOMBARDO
        90 State Street
        Albany, NY 12207
        518-312-4176
        dkinsella@khlaw.net